ROSEMARIE IMPRESCIA *vs*. FRANCIS J. IMPRESCIA.

Suffolk.  February 8, 1984. — May 24, 1984.

Present: WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil*, Discovery, Default. *Rules of Domestic Relations Procedure*.

On appeal from a default judgment entered on a petition for contempt in a
Probate Court as a result of the defendant's flagrant disregard of certain
discovery orders, this court, considering the policy against default judg-
ments in domestic relations proceedings and the omission in Mass. R.
Dom. Rel. P. 37 (b) (2) of default as a sanction for failure to comply
with discovery, remanded the case for consideration of other appropriate
sanctions under rule 37. [104-106]

LIBEL for divorce filed in the Probate Court for the county
of Suffolk on May 30, 1973.

A complaint for contempt filed on March 13, 1979, was
considered by *Fitzpatrick, J.*

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Anthony M. Traini* for the defendant.

*George P. Lordan, Jr.,* for the plaintiff.

LYNCH, J. The defendant appeals from the default judgment
of contempt of a divorce decree, entered in the Probate and
Family Court Department, Suffolk County, on his former
wife's complaint that he had failed to make certain payments
of alimony and child support. Entry of the judgment was made
by a judge in the Probate Court after the defendant's repeated
failure to comply with discovery orders. The Appeals Court
reluctantly remanded the case to the Probate Court for explo-
ration of the possible imposition of other sanctions. It reasoned
that the traditional policy against default judgments in domestic
relations proceedings and the absence of default as a sanction
for failure to comply with discovery in Mass. R. Dom. Rel. P.

37 (b) (2) (C) (1982) (domestic rule 37) restricts the Probate Court's power to default a party even in so flagrant a case of discovery misbehavior as this. *Imprescia v. Imprescia*, 16 Mass. App. Ct. 378 (1983). We allowed the plaintiff's application for further appellate review. We agree with the Appeals Court that the availability of the sanction of default is significantly more restricted under the domestic rules and that the judge should have explored the possibility of applying the sanctions specifically provided for in domestic rule 37.

The parties were divorced on October 17, 1973. The decree nisi of divorce, entered on that date, incorporated an agreement of the same date, which provided for alimony, child support, and certain other payments to be made by the defendant. The defendant alleges that on January 26, 1977, the parties entered into another agreement which significantly altered his financial obligations to the plaintiff. The plaintiff contends that this agreement was never entered as an order of the court and therefore is not a valid modification of the 1973 agreement or, alternatively, that it was procured by fraud on the part of the defendant.

On March 13, 1979, the plaintiff filed a complaint for contempt, alleging that the defendant had failed to comply with the 1973 decree and was approximately $36,000 in arrears. The defendant pleaded compliance with the January 26, 1977, agreement as a defense to the complaint. In July, 1979, he was served with interrogatories and a notice to produce documents. Although the defendant produced some of the information requested, some of the documents, which primarily concerned his financial condition during the years 1976 through 1980, were never produced. Between September, 1979, and December, 1981, he was ordered by the judge on seven separate occasions to complete discovery. He was warned that the sanctions of domestic rule 37 (b) (2) (C) would be imposed if he did not comply. He was ordered to pay $300 in attorney's fees to the plaintiff, which he did. On November 9, 1981, he was ordered to answer all unanswered deposition questions[1] and to

---

[1] These questions related to the sale of property by the defendant in 1979.

provide all outstanding documents "or a judgment shall enter for plaintiff on the contempt without further action by this Court." On December 17, 1981, the judge ordered the defendant committed for sixty days until he should purge himself of his contempt by paying the plaintiff the amount of his arrearage for support, alimony, and other bills which the judge determined to be $53,451.70.

A word of explanation is needed about the judgment. The document itself is a form entitled "Judgment of Contempt." It states, in pertinent part: "After hearing, it is adjudged that defendant is guilty of contempt of this court for having willfully failed and refused to obey its order of *October 17, 1981,* in that defendant neglected and refused to pay support, alimony *and other bills* the arrearage of which is fixed at *$53,451.70.*" (Italics indicate those portions which were filled in by the judge.)[2] It is clear from the plain language of this order and from the judge's order of November 9, 1981, that if the defendant failed to provide discovery within twenty days "a judgment shall enter for plaintiff on the contempt *without* further action by this Court," that this judgment is a judgment on the initial complaint for contempt for failure to comply with the divorce decree. Since the judgment establishes without a hearing that the defendant owes the plaintiff $53,451.70 in arrears, it is in effect a default judgment.

The Appeals Court held that the sanction of default is "significantly more restricted under the domestic rules" than under the rules of civil procedure. Massachusetts R. Civ. P. 37 (b) (2) (C), 365 Mass. 797 (1974), provides that a court may sanction a failure to obey an order to provide discovery with an order "striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party." The language of domestic rule 37 (b) (2) (C) tracks the civil rule exactly, except

---

[2] Since there was no order entered on October 17, 1981, in this case, we assume that the judge was referring to the defendant's failure to obey the order of October 17, 1973, the date of the divorce decree.

that it omits the last clause. This omission appears to reflect the traditional policy against default judgments in domestic relations cases. See, e.g., the comment explaining that a counterpart to Mass. R. Civ. P. 55, 365 Mass. 822 (1974), was omitted from the domestic rules because such a rule would have been "inappropriate to Domestic Relations cases." Reporters' Notes to Mass. R. Dom. Rel. P. 55, Mass. Ann. Laws, Rules of Domestic Relations Procedure at 179 (1982). See also *Teuscher* v. *Teuscher*, 9 Mass. App. Ct. 914 (1980), and J.V. Harvey & E.M. Moriarty, Massachusetts Domestic Relations § 23.4, at 134 (1984) ("A party cannot be defaulted for failure to answer interrogatories . . .").

It is true that the implications of default in an ordinary domestic relations case (an action for divorce, or child custody, for example) are very different from those in an ordinary civil case. Even in an uncontested divorce action, for instance, a hearing will be held before the divorce is granted. There is a societal interest in the disposition of such matters, particularly concerning issues such as child custody and support, which would not be satisfied by a default judgment. In an action for contempt of a support order, however, this societal interest is not implicated. The dispute between the husband and wife in this case is analogous to an action in contract where a specific amount of damages is sought. A judgment by default in this case, therefore, would not necessarily violate the traditional policy against defaults in domestic relations proceedings.

In the circumstances of this case, however, we hold that the judge should not have ordered the defendant defaulted because other sanctions were available to her under the provisions of domestic rule 37(b)(2).[3]

---

[3] Since the domestic rule does provide the judge with sanctions appropriate for this sort of infraction, we need not delve into the issue of the Probate Court's inherent power to default. See *Societe Internationale* v. *Rogers*, 357 U.S. 197, 207 (1958) (Rule 37 is exclusive source for sanctions for failure to comply with discovery); *Independent Prods. Corp.* v. *Loew's Inc.*, 283 F.2d 730, 733 (2d Cir. 1960) ("The court below should have dealt with the issues pertinent to the motion to compel answers by following the specific procedures set forth in Rule 37(a) and (b) instead of ignoring these procedures and summarily dismissing the complaint, even though this

For example, domestic rule 37 (b) (2) (A) allows the judge to enter "[a]n order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order." Since the plaintiff was seeking information about the defendant's financial situation and dealings during the years he is alleged to have been in contempt of his support obligations, the judge could have ordered taken as established pursuant to domestic rule 37(b)(2)(A), for example, that the defendant was financially able to pay the arrearage or that the amount the plaintiff claimed to be in arrears was the correct amount.

Domestic rule 37 (b) (2) (B) allows the judge to enter "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence." The defendant claims that he is not in arrears because he and the plaintiff privately agreed to "modify" the original alimony and support order in January, 1977.[4] Some of the information sought by the plaintiff through discovery relates to the defendant's financial condition in January, 1977, and is directly relevant to her claim that her consent to the "modification" and forgiveness of arrears was fraudulently induced. To the extent that the defendant refused to provide information relevant to this issue, the judge could certainly have entered an order precluding him

---

precipitate action is sought to be justified as being within the court's inherent powers. . . . The lower court need not and should not have resorted to the use of its inherent power"). See also C. Wright, Federal Courts 442 (3d ed. 1976) ("[R]esort to other authority is needless and confusing. With the exception of . . . [Rules 45(f) and 30(g)] . . . Rule 37 is, as the Supreme Court has now held, the exclusive authority for sanctions for discovery procedures"). Cf. *Davis* v. *Superior Court*, 580 P.2d 1176, 1178 (Alaska 1978) ("Since Civil Rule 95(b) expressly provides for a sanction . . . it was not necessary to rely on any reservoir of the court's inherent powers . . .").

[4] Although we do not decide the issue, the validity of a private agreement between husband and wife made subsequent to a judgment of divorce which purports to change the financial obligations of the parties, but which is never brought before the Probate Court or approved as a modification of the original order, is at least open to serious question.

from asserting the "modification" as a defense, or prohibiting him from introducing any evidence respecting this defense. See *In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 823 (3d Cir. 1982), cert. denied sub nom. *Alaska* v. *Boise Cascade*, 459 U.S. 1156 (1983) (judge may exclude evidence when it is directly related to a party's refusal to comply with discovery). Similarly, domestic rule 37(b)(2)(C) permits the judge to enter "[a]n order striking out pleadings or parts thereof." The fact that striking out the defendant's only defense would have the same practical effect as any entry of default, *International Mining Co.* v. *Allen & Co.*, 567 F. Supp. 777, 790 (S.D.N.Y. 1983), is not a bar in this case, given our discussion above on the availability of default in domestic relations cases, generally, and, in this case, specifically.

Finally the judge had the option of treating the defendant's failure to comply as a contempt of court. Domestic rule 37 (b) (2) (D). As a consequence of the defendant's being found in contempt, the judge can order him imprisoned or fined to compel his obedience to her discovery orders. *G. & C. Merriam Co.* v. *Webster Dictionary Co.,* 639 F.2d 29, 41 n.13 (1st Cir. 1980). *Parker* v. *United States*, 153 F.2d 66, 70 (1st Cir. 1946).

There are, therefore, two possible contempts in this case; contempt pursuant to domestic rule 37 (b) (2) (D), and contempt of the divorce decree. The order of December 17, 1981, was a judgment on the merits of the plaintiff's complaint for contempt of the divorce decree and thus merged the distinction between the two. This sanction should not have been applied, at least while an alternative was available to the judge within the provisions of domestic rule 37 (b) (2) for dealing with contempt of the discovery order.

Because it is our view that the judge could find the sanction she wanted within the four corners of domestic rule 37 (b) (2), the default judgment is vacated and the case is remanded to the Probate Court for further proceedings consistent with this opinion.

*So ordered.*